FILED

2013 Aug-16  AM 10:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KAREN GENTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 12-S-586-NE** |
| | ) | |
| **KOHLER CO. and KOHLER** | ) | |
| **CO. GROUP INSURANCE** | ) | |
| **PLANS FOR FACTORY** | ) | |
| **ASSOCIATES AT** | ) | |
| **HUNTSVILLE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Karen Gentle, a former employee of defendant, Kohler Company ("Kohler"), seeks short- and long-term disability benefits through Kohler's employee benefits plan.[1]  Plaintiff asserts claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*[2]  This action is before the court on the parties' cross-motions for summary judgment.[3]  Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes that plaintiff is entitled to short-term disability benefits, but not to long-term benefits.

---

[1] *See* doc. no. 1 (Complaint).

[2] Doc. no. 1 (Complaint) ¶¶ 2, 4, 12.  Plaintiff names Kohler and the Plan as defendants.  *See id.*

[3] *See* doc. no. 24 (Defendants' Motion for Summary Judgment); doc. no. 25 (Plaintiff's Motion for Summary Judgment).

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (alteration supplied).  Thus, "the plain language of [that rule] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration supplied).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> [However,] [t]he mere existence of *some* factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal citations omitted, alterations and emphasis supplied).

When presented cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each

side, whether a judgment may be entered in accordance with the Rule 56 standard."

10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2720, at

335-36 (1998) (footnote omitted, alteration supplied).  As another court within this

Circuit has observed:

> "Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).  "Even where parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*; *accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.,* 176 F.3d 794, 797 (4th  Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact.  Instead, [the court must] consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.") (citations omitted).

*Ernie Haire Ford, Inc. v. Universal Underwriters Insurance Co.,* 541 F. Supp. 2d

1295, 1297-98 (M.D. Fla. 2008) (alteration in original).  *See also American  Bankers*

*Insurance Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005) ("This court

reviews the district court's disposition of cross-motions for summary judgment *de*

*novo*, applying the same legal standards used by the district court, viewing the

evidence and all factual inferences therefrom in the light most favorable to the non-

movant, and resolving all reasonable doubts about the facts in favor of the non-moving party.").

## II.  SUMMARY OF FACTS

The "Summary Plan Description" of Kohler's employee benefits plan (the "Plan") states that Kohler, as the Administrator of the Plan, "has the exclusive right to determine eligibility for benefits and to interpret the provisions of the benefit plan, so the decision by the Plan Administrator shall be conclusive and binding."[4]  The Plan's description states that "the company makes all payments from the Plan, and final decisions on all claims.  Proof of disability must be satisfactory to the company."[5]

### A.  Plan Description

In a section entitled "Highlights of Your Pay Protection Program," the Summary Plan Description states that:  "Short-Term Disability benefits are paid weekly.  They may continue to a maximum of 26 weeks *if you are totally disabled*."[6]  A subsequent section, entitled "Your Short-Term Benefit," notably omits the reference to "total disability" and, instead, speaks only of becoming "disabled": *i.e.*, "*If you become disabled by accidental injury or illness, are unable to work at your*

_____

[4] Doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00047.
[5] *Id.* at K-00056.
[6] *Id.* at K-00050 (emphasis supplied).

4

*job, and are under a doctor's care,* you will be eligible for a weekly benefit from this plan."[7]

The Plan's description of long-term disability benefits also contains a similar contradiction. In the section entitled "Highlights of Your Pay Protection Program," the Plan states: "Long-term disability benefits begin *after you have been disabled for 26 weeks.*"[8] Note again that the term "disabled" is not qualified by the adjective "total." Conversely, the section entitled "Long-Term Disability Benefits" resurrects the "total disability" requirement when it states that: "Benefits begin after you have received 26 weeks of Short-Term Disability *providing you remain totally disabled.*"[9]

The term "total disability" is defined in only one place: a section entitled "When Long-Term Disability Benefits Are Paid."[10] That part of the Plan states:

### When Long-Term Disability Benefits Are Paid

Long-Term Disability benefits begin *after you've been totally disabled for 26 weeks*.

### What "Total Disability" Means

• During the first 36 months of disability you must be totally disabled from performing *any and every duty of your occupation or similar job*.

---

[7] *Id.* at K-00052 (emphasis supplied).
[8] *Id.* at K-00050 (emphasis supplied).
[9] *Id.* at K-00054 (emphasis supplied).
[10] Doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00055.

- After 36 months you must be totally disabled from performing *any occupation or employment.*

At all times, you must be under the care of a licensed physician. Before your Long-Term Disability benefit payments can begin, your disability will need to be medically verified and satisfactory to the company.[11]

## B.   Claim Review Process

If an employee's initial claim for short-term disability benefits is denied, he or she may file an appeal.[12]  The appeals process allows the employee to obtain "a full review" of the disability claim.[13]  Specifically, the Summary Plan Description states:

### *If A Claim Is Denied*

If a claim is denied, either totally or partially, you or your beneficiary will receive a written notice within 90 days after you first filed the claim.  The notice will explain the reason for the denial, refer to the specific plan provision or provisions on which the denial is based, describe any additional information which is necessary to process your claim and explain why such information is necessary, and describe the steps to be taken if you wish to submit your claim for review.

If a claim is denied, you may appeal the denial within 65 days to the Plan Administrator and subsequently through ERISA.  If you have a dispute on the application of negotiated benefit levels, it may be referred to the grievance procedure within 30 days of the final ERISA decision.

. . . .

---

[11] *Id.* (boldface emphasis in original, all other emphasis supplied).
[12] *Id.* at K-00056.
[13] *Id.*

### *If You Disagree With The Decision*

If you or your beneficiary disagree with the denial decision, you, your beneficiary, or an authorized representative can make a written request within 65 days to the plan administrator for a review of the claim. Pertinent documents may be reviewed, and issues and comments may be submitted in writing.

Within 60 days after a request for a review is received, you or your beneficiary will receive a written notice of the final decision or the reasons for the delay in reaching a final decision, if special circumstances require an extension of time.

In any event, a final decision will be reached, and you will be notified within 120 days after a request for a review is received. The final decision will be in writing and will include the specific reasons for the decision as well as references to the specific plan provision on which the decision is based.

The Plan Administrator has the exclusive right to determine eligibility for benefits and to interpret the provisions of the benefit plan, so the decision by the Plan Administrator shall be conclusive and binding.[14]

### C.   **Plaintiff's Work History**

Plaintiff was employed by Kohler at its Huntsville, Alabama factory for more than ten years, from April 1, 1999 until September 23, 2009.[15]  During the course of her employment, plaintiff mainly worked as a "Molder Operator," but occasionally in several other positions as necessary.[16]  Her duties required medium to heavy

---

[14] *Id.* at K-00121.
[15] Doc. no. 26-5 (Exhibit to Defendant's Motion for Summary Judgment), at K-00222.
[16] *Id.*

physical exertion, and the positions occupied were classified by the Dictionary of Occupational Titles as "unskilled" to lower "semi-skilled" jobs.[17]  Plaintiff's primary position (that of Molder Operator) required her to lift and manipulate fifty-pound fiberglass "charges," while simultaneously operating two industrial presses.[18]  In order to perform those tasks, plaintiff was required to remain standing and mobile for the majority of her twelve-hour shift as she walked between stations.[19]

Due to the physical nature of her work, plaintiff began to experience various pains.[20]  Eventually, she sought medical treatment.[21]  She was diagnosed as suffering from multiple physiological conditions, including osteoarthritis, carpal tunnel syndrome, and endometriosis.[22]  She was repeatedly excused from work by Dr. Angelina Alejandrino, her primary care physician, and Dr. Louis G. Horn, III, an orthopaedic surgeon.[23]  Although plaintiff obtained various excuses from work from both doctors, beginning on March 10, 2009, she was not granted short-term disability benefits until June 16, 2009.[24]  Disability Examiner II Joanne Tasche denied

---

[17] *Id.*

[18] Doc. no. 26-7 (Deposition of Dewey Gentle), at 48-49.

[19] *Id.* at 50, 52.

[20] *See* doc. no. 22-3 (Exhibit to Declaration of Daniel J. Velicer), at K-00171-78.

[21] *See id.*

[22] *See id.*

[23] *See id.*

[24] *Id.* at K-00190 (June 16, 2009 letter granting benefits for the period between May 14 and June 1, 2009).

plaintiff's claim for short-term disability benefits for the period between March 30 and April 6, 2009, but granted the claim for the period between May 14 and June 1, 2009.[25]   Plaintiff's husband, Dewey Gentle, decided not to appeal the first denial decision, for the period between March 30 and April 6, 2009, "[b]ecause [plaintiff's condition] wasn't as severe [at that time].  She went back to work."[26]

## D.   Submission of October 16, 2009 Claim

Dewey Gentle filed plaintiff's next claim for short-term disability benefits on October 16, 2009, in response to his wife's absence from work that began on September 22, 2009 — an absence from which, as subsequent facts will show, she never returned.[27]   Plaintiff's primary care physician, Dr. Alejandrino, stated that plaintiff's osteoarthritis would render her totally disabled from September 22nd, when she was examined by Dr. Alejandrino, until November 13, 2009.[28]   At that time, Dr. Alejandrino believed that plaintiff would be able to return to "full duty work" after that period of disability.[29]   On November 11, 2009, however, Dr. Alejandrino

---

[25] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00129 (June 18, 2009 letter denying benefits for the period between March 30 and April 6, 2009); doc. no. 22-3 (Exhibit to Declaration of Daniel J. Velicer), at K-00190 (June 16, 2009 letter granting benefits for the period between May 14 and June 1, 2009).

[26] Doc. no. 26-7 (Deposition of Dewey Gentle), at 66 (alterations supplied).

[27] Doc. no. 22-3 (Exhibit to Declaration of Daniel J. Velicer), at K-00163.

[28] *Id.* at K-00164.

[29] *Id.*

9

extended plaintiff's medically excused absence to December 10, 2009.[30]   Dr. Alejandrino further extended the period of plaintiff's absence on November 30, 2009, to January 9, 2010.[31]

Joanne Tasche received Dewey Gentle's October 16, 2009 application for short-term disability benefits on behalf of his wife on October 30, 2009.[32]   Before processing the claim, Tasche requested that Dr. Alejandrino submit copies of plaintiff's medical records from "September 23, 2009 through [the] present."[33]   Dr. Alejandrino faxed the requested medical records to Kohler on November 2, 2009.[34] While Tasche did not expressly make a separate request for records from Dr. Louis G. Horn, III, plaintiff's orthopaedic surgeon, the records supplied by Dr. Alejandrino included documentation of plaintiff's treatment by Dr. Horn.[35]   Dr. Alejandrino's records indicated that, beginning on September 23, 2009, plaintiff suffered from "severe muscle spasms in [her] back and arms," "muscle and joint pains," "lumbar area tenderness with paraspinal muscle spasm," "bilateral knee tenderness," "cramps in her belly," "knee and shoulder pains," and "stomach spasms."[36]   Dr. Horn

---

[30] *Id.* at K-00158.

[31] *Id.* at K-00157.

[32] *Id.* at K-00163 (Claim Stamped "Received Oct 30 2009").

[33] Doc. no. 22-3 (Exhibit to Declaration of Daniel J. Velicer), at K-00179 (Letter dated June 3, 2009, from Joanne Tasche to Dr. Angelina Alejandrino) (alteration supplied).

[34] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00132-36.

[35] *Id.* at K-00139.

[36] *Id.* at K-00131-33 (alteration supplied).

diagnosed plaintiff's condition as "early stage medial compartment chondromalacia and degenerative joint disease of knees."[37]

## E.   Denial of Benefits

After reviewing the information referenced above, as well as additional medical evidence subsequently submitted by Dewey Gentle in support of his wife's claim, Joanne Tasche denied plaintiff's October 16th claim for short-term disability benefits.[38]  Her November 23, 2009 denial letter states:

> Following a review of your STD [*i.e.* short-term disability] claim, benefits are denied for the following reason(s):
>
> If Kohler Co. requests proof of disability, it must be satisfactory to the company in order for benefits to be paid as indicated on page 47 of your Benefit Program Binder.  In reviewing your medical records from Dr. Alejandrino and Dr. Horn, there is no objective medical documentation supporting disability.
>
> . . . .
>
> If you disagree with the STD claim action taken, you may appeal the decision by writing Kohler Co. and submit any comments, supporting documents, records, or any other information relating to your claim . . . . If your STD benefit denial is upheld, you may file a second appeal with Kohler Co.'s Director-Global Benefits.
>
> If both Kohler Co. appeal options are exhausted and your STD claim remains denied, you then have the right to file a civil action under ERISA section 502.[39]

---

[37] *Id.* at K-00137.

[38] *Id.* at K-00128; doc. no. 22-3 (Exhibit to Declaration of Daniel J. Velicer), at K-00158.

[39] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00128 (alterations

After denying plaintiff's claim, Kohler neither ordered an examination of plaintiff, nor submitted Tasche's decision to medical peer review.

Plaintiff denies ever seeing Tasche's denial letter, or discussing it with her husband.[40]  Similarly, Dewey Gentle does not specifically remember the letter, but he and his wife obviously received it, because he testified that he "took it to the plant and gave it to HR [*i.e.* Human Resources]."[41]

## F.    Dewey Gentle's Discussions of Plaintiff's Claims With Kohler Employees in Huntsville

Dewey Gentle asserts that he discussed the denial of his wife's claim for short-term disability benefits with Huntsville Human Resources employees Denise Robinson and Becky McCutcheon, Plant Manager John Kyle, and Area Supervisors Wendell Wilbanks and James Shelton.[42]  He acknowledges that he did not understand the claims process, and that he did not ask any of the foregoing persons to explain it.[43]

Becky McCutcheon encouraged Dewey Gentle to file an appeal.[44]  Notably, Mr. Gentle claims that both Denise Robinson and Becky McCutcheon told him:  "We're family here, *we'll handle it for you*."[45]  Likewise, Mr. Gentle contends that Plant

_____

supplied).

[40] Doc. no. 26-6 (Deposition of Karen Gentle), at 21-22.

[41] Doc. no. 26-7 (Deposition of Dewey Gentle), at 22-23 (alteration supplied).

[42] *Id.* at 41.

[43] *Id.* at 29.

[44] Doc. no. 32 (Declaration of Becky McCutcheon) ¶ 7.

[45] Doc. no. 26-7 (Deposition of Dewey Gentle), at 22 (emphasis supplied).

Manager John Kyle "was making some calls.  To whom, I did not know that, I would assume it is Kohler.  *And he said not to worry about it*, '*We are taking care of this*.'"[46] Dewey Gentle also testified that his co-workers explicitly told him that his wife "would get her benefits."[47]  Even so, Mr. Gentle admits that none of the Huntsville plant personnel with whom he discussed the denial had any authority over the benefits claim process.[48]

## G.    Appeal and Submission of Additional Evidence

Again acting on behalf of his wife, Dewey Gentle began the process of submitting additional evidence and appealing the denial of short-term disability benefits by submitting a note from Dr. Alejandrino concerning her examination of plaintiff on November 30, 2009.[49]  That document was received by Kohler on December 2, 2009.[50]  Dr. Alejandrino's note excused plaintiff from work between September 22, 2009 and January 9, 2010, due to "severe knee osteoarthritis."[51]  She also opined for the first time that plaintiff was totally disabled, saying that she "is not able to fulfill the requirements of her job *any more* due to osteoarthritis."[52]

---

[46] *Id.* at 13 (emphasis supplied).

[47] *Id.* at 12-13.

[48] *Id.* at 18.

[49] Doc. no. 22-3 (Exhibit to Declaration of Daniel J. Velicer), at K-00157.

[50] *Id.*

[51] *Id.*

[52] *Id.* (emphasis supplied).

Dewey Gentle wrote plaintiff's appeal letter and delivered it to Kohler's Human Resources department in Huntsville.[53]  In turn, employees of that department faxed the letter to Kohler's Benefits Department in Wisconsin on December 14, 2009.[54]  Although Mr. Gentle wrote the letter himself, he discussed it with his wife, and had her sign it.[55]  Mr. Gentle also included a note from his wife's orthopaedic surgeon, Dr. Horn, stating that plaintiff had "osteoarthritis of the knees," and that she was "unable to work on legs."[56]

Dr. Alejandrino next examined plaintiff on January 3, 2010.[57]  Following that examination, Dewey Gentle submitted additional medical records to Kohler.[58]  Kohler received that documentation on January 15, 2010.[59]  Among other issues addressed, Dr. Alejandrino excused plaintiff's absence from work between September 22, 2009 and February 15, 2010, due to an "osteoarthritis flare-up."[60]  Dewey Gentle also provided Huntsville Human Resources employee Becky McCutcheon with an undated

---

[53] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00125; doc. no. 26-7 (Deposition of Dewey Gentle), at 20-24.

[54] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00125; doc. no. 26-7 (Deposition of Dewey Gentle), at 20-24.

[55] Doc. no. 26-6 (Deposition of Karen Gentle), at 23-24.

[56] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00127.

[57] Doc. no. 22-3 (Exhibit to Declaration of Daniel J. Velicer), at K-00156.

[58] *Id.*

[59] *Id.*

[60] *Id.*

note from Dr. Horn on January 25, 2010.[61]  That note states that plaintiff "[h]as arthritis of knees which will get worse with time."[62]  After forwarding this last note to Registered Nurse and Certified Occupational Health Nurse Specialist Jim Jost, McCutcheon e-mailed the following message:

> This is the [doctor's] note [that] Dewey [Gentle] brought to me yesterday[,] which is certainly not enough to determine that [plaintiff is] disabled in my opinion.  I just don't think [the Gentles] understand that [none] of the documentation Dr. Horn has provided indicates that she can no longer work.[63]

## H.    Denial of Appeal

After reviewing the supplemental material and the appeal letter drafted for plaintiff by her husband, Registered Nurse and Certified Occupation Health Nurse Specialist Jim Jost denied plaintiff's appeal of the denial of her October 16, 2009 claim for short-term disability benefits on January 27, 2010.[64]

When explaining the reasons for his denial of the appeal, Jost accepted that both Dr. Alejandrino and Dr. Horn had diagnosed plaintiff with osteoarthritis.[65]  Even so, Jost stated that he was "not convinced that this condition prevents you from working, if only on a limited or restricted basis.  As you have not provided proof that

---

[61] *Id.* at K-00154-55.
[62] *Id.* at K-00155 (alteration supplied).
[63] Doc. no. 22-3 (Exhibit to Declaration of Daniel J. Velicer), at K-00154 (alterations supplied).
[64] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00123.
[65] *Id.*

satisfies the company of a disability that prevents you from working, no STD benefits are payable for this absence."[66] Before denying plaintiff's appeal, neither Jost nor any other Kohler official requested any additional medical information from either Dr. Alejandrino or Dr. Horn.

Jost's appeal denial letter stated that plaintiff was entitled to file a secondary appeal, if she wished to do so, and that she could institute a suit under ERISA if the secondary appeal was denied.[67] Even so, neither plaintiff nor her husband, acting on her behalf, ever filed a secondary appeal.  Mr. Gentle first claimed that he did not "remember" receiving the letter from Jost described above.[68]  He later stated unequivocally that he did not receive the letter, and that it might have been lost in the mail.[69]  Nevertheless, it is significant to note that a letter from plaintiff's attorney to Jost appears to quote passages from Jost's January 27, 2010 denial letter.[70]  The letter from plaintiff's attorney to Jost is dated October 15, 2010, and includes the following assertion:  "Your statement 'I am not convinced that this condition prevents you from working' is not objective medical evidence and is no basis to deny Mrs. Gentle's

---

[66] *Id.*

[67] *Id.*

[68] Doc. no. 26-7 (Deposition of Dewey Gentle), at 24-25.

[69] *Id.*

[70] Doc. no. 22-4 (Exhibit to Declaration of Daniel J. Velicer), at K-00241; doc. no. 26-7 (Deposition of Dewey Gentle), at 33-34, 37.

claim."[71]  Mr. Gentle claims that he has "no idea" how his wife's attorney could quote a statement from Jost's denial letter, if — as Mr. Gentle asserts — neither he nor his wife received the letter through the mail.[72]

## I.   Post-Denial Communications

Dewey Gentle called Kohler's Wisconsin office at some point after receiving Joanne Tasche's November 23, 2009 denial of plaintiff's claim for short-term disability benefits.[73]  During that telephone call, Mr. Gentle, *in fact*, initially spoke with Joanne Tasche, but he mis-identified Tache as a "receptionist."[74]  Tasche allegedly could not answer Mr. Gentle's questions, so he asked to speak to "a supervisor."[75]  Mr. Gentle described his subsequent conversation with an unidentified supervisor as follows:

> [The supervisor] kept saying, "Well, it's been denied.  And you waited too long to file another appeal" or something.
>
> And I said, "Well, the company is taking care of it.  It's been going on for the last six or eight months.  And the company [*apparently meaning the Huntsville plant personnel with whom Mr. Gentle had spoken*] said they would take care of it."

---

[71] Doc. no. 22-4 (Exhibit to Declaration of Daniel J. Velicer), at K-00241 (quoting doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00123).

[72] Doc. no. 26-7 (Deposition of Dewey Gentle), at 33-34.

[73] *Id.* at 44.

[74] *Id.* at 35.

[75] *Id.*

And she said, "Well, file a civil lawsuit" and hung up.[76]
Following her husband's conversation with the unidentified supervisor, plaintiff retained counsel to recover her short-term disability benefits.[77]

Plaintiff's counsel sent a letter to Jim Jost on October 15, 2010, and requested *both* short- and long-term disability benefits.[78]   (That was the letter in which plaintiff's counsel appeared to quote from Jost's November 23, 2009 denial letter by stating:  "Your statement 'I am not convinced that this condition prevents you from work' is not objective medical evidence and is no basis to deny Mrs. Gentle's claim."[79])  Senior Staff Attorney Paul Kardish responded to plaintiff's attorney, stating that, because "Ms. Gentle did not submit or request a timely appeal of the January 27, 2010, decision, . . . [she] failed to exhaust her administrative remedies under the plan."[80]

Plaintiff's attorney sent a letter to Senior Staff Attorney Paul Kardish on August 3, 2011, and another letter to Jim Jost on October 19, 2011.[81]  Kohler's Director of Global Benefits, Daniel Velicer, answered the letters on November 30, 2011, stating:

---

[76] *Id.* at 36 (alterations supplied).

[77] Doc. no. 22-4 (Exhibit to Declaration of Daniel J. Velicer), at K-00241.

[78] *Id.; see also* Part II(H), *supra* (discussing letter from plaintiff's counsel).

[79] Doc. no. 22-4 (Exhibit to Declaration of Daniel J. Velicer), at K-00241.

[80] *Id.* at K-00228 (alteration supplied).

[81] *Id.* at K-00210-11.

I reviewed Ms. Gentle's disability file including all prior correspondence with you.  I see that on October 19 of last year Mr. Kardish advised you in a telephone conversation, which he confirmed by letter dated October 21, 2010, that Ms. Gentle failed to exhaust her administrative remedies under the plan.  She had not submitted a timely (second) appeal of the decision to uphold the denial of her claim for short-term disability (STD) benefits.  That fact has not changed.  Mrs. Gentle was advised, by a letter from Jim Jost dated January 27, 2010, that her appeal dated December 14, 2009, had been denied and that she had 180 days from the date of Mr. Jost's letter to appeal that decision. The next correspondence we received regarding Ms. Gentle's STD claim was your letter dated October 15, 2010.  It was that letter that prompted Mr. Kardish to have the telephone conversation with you referenced above.

Because Ms. Gentle failed to exhaust her administrative remedies under the plan, no further consideration will be given to her claim for disability benefits.[82]

## III.  DISCUSSION

### A.   Whether Plaintiff Exhausted her Administrative Remedies

Plaintiff seeks short- and long-term disability benefits through Kohler's employee benefits plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").[83]  Section 1022 of that statute provides:

(a) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b) [29 USCS § 1024(b)].  The summary plan description shall include the information described in subsection (b), *shall be written in a manner calculated to be understood by the average plan participant,*

---

[82] *Id.* at K-00206.
[83] Doc. no. 1 (Complaint) ¶¶ 2, 4, 12.

> *and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan*. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 104(b)(1) [29 USCS § 1024(b)(1)].

29 U.S.C. § 1022(a) (alterations in original, emphasis supplied). Sub-section (b) of

that same statutory provision provides that summary plan descriptions must include,

among other information:

> *the procedures to be followed in presenting claims for benefits under the plan* including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this Act and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 733(a)(1) [29 USCS § 1191b(a)(1)]), *the remedies available under the plan for the redress of claims which are denied in whole or in part* (including procedures required under section 503 of this Act [29 USCS § 1133]), and if the employer so elects for purposes of complying with section 701(f)(3)(B)(i) [29 USCS § 1181(f)(3)(B)(i)], the model notice applicable to the State in which the participants and beneficiaries reside.

29 U.S.C. § 1022(b) (emphasis supplied, alterations in original).

"Ambiguities in ERISA plans are construed against the drafter of the document,

and a claimant's reasonable interpretation is viewed as correct." *White v. Coca-Cola

Co.*, 542 F.3d 848, 855 (11th Cir. 2008) (citing *Lee v. Blue Cross/Blue Shield of

Alabama*, 10 F.3d 1547, 1551 (11th Cir. 1994)).

20

"It is well-established law in [the Eleventh] Circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990) (alteration supplied).

> Exceptions to the exhaustion requirement do exist, however, most notably "'when resort to the administrative route is futile or the remedy inadequate.'" *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990) (quoting *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)). In light of such exceptions, "the decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court has clearly abused its discretion." *Curry*, 891 F.2d at 846.

*Springer*, 908 F.2d at 899.

Here, the appeals process described in the Summary Plan Description differs from the appeals process detailed in both Joanne Tache's letter denying plaintiff's claim for short-term disability benefits and Jim Jost's letter denying her appeal. As noted in Part II(B) of this opinion, *supra*, the Summary Plan Description states that "[i]f a claim is denied, you may appeal the denial within 65 days to the Plan Administrator and subsequently through ERISA."[84]

In contrast to the language of the Summary Plan Description quoted above,

---

[84] Doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00121 (alteration supplied).

Joanne Tasche's November 23, 2009 letter denying plaintiff's claim for short-term

disability benefits states:

> If you disagree with the STD [*i.e.*, short-term disability] claim
> action taken, you may appeal the decision by writing Kohler Co. and
> submit any comments, supporting documents, records, or any other
> information relating to your claim . . . . *If your STD benefit denial is
> upheld, you may file a second appeal with Kohler Co.'s Director-Global
> Benefits.*
>
> *If both Kohler Co. appeal options are exhausted* and your STD
> claim remains denied, you then have the right to file a civil action under
> ERISA section 502.[85]

Likewise, Jim Jost's January 27, 2010 letter denying plaintiff's appeal states:

> If you disagree with this determination, you have the right to
> receive copies at no cost, of all relevant documents, records, and/or
> other information Kohler Co. used for this decision.  *You are also
> entitled to submit a secondary appeal to the Kohler Co. Director-Global
> Benefits within 180 days after receipt of this notification.*  Include
> specific information, documents, and records to support your subsequent
> appeal. *If your claim continues denied after this secondary appeal*, you
> then have the right to file a civil action under ERISA section 502.[86]

Thus, the Summary Plan Description indicates a *single-level appeal process*

with Kohler through the Plan Administrator and subsequent appeals through ERISA.

In contrast, both Joanne Tache's letter denying plaintiff's claim for short-term

disability benefits, and Jim Jost's letter denying her appeal, require a *second appeal*

---

[85] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00128 (emphasis and alteration supplied).

[86] *Id.* at K-00123 (emphasis and alterations supplied).

*step*, to Kohler's Director of Global Benefits.[87]

### 1.  Short-term disability benefits

Kohler does not dispute that plaintiff "followed . . . requirements and submitted a *first* written appeal" of the denial of her claim for short-term disability benefits.[88] Even so, it argues that plaintiff "failed to exhaust the . . . administrative remedy of a *second* appeal."[89]  Thus, the issue turns on which description of the appeals process is controlling:  that included in the Summary Plan Description; or that incorporated in the letters of Joanne Tasche and Jim Jost?

Kohler cites a footnote from an unpublished decision of the Middle District of Alabama in the case of *Denning v. Strategic Outsourcing, Inc.*, No. 2:03cv431-T, 2005 WL 4056647, at *4 n.15 (M.D. Ala. Jan. 5, 2005), for the proposition that the "description of the appeals process need not be limited to the benefits plan, but may also be included in the letter announcing the denial of the claim." *See id.* at *4 n.15.[90] In turn, *Denning* relies on a footnote from *Watts v. Bellsouth Telecommunications, Inc.*, 316 F.3d 1203 (11th Cir. 2003), which states, *in dicta*, that "a denial-of-benefits letter may *supplement* the appeals process outlined in a plan." *Denning*, 2005 WL

---

[87] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00128; *id.* at K-00123.

[88] Doc. no. 27 (Defendants' Brief in Support of their Motion for Summary Judgment), at 17 (emphasis supplied) (citing doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00126).

[89] Doc. no. 27 (Defendants' Brief in Support of their Motion for Summary Judgment), at 16 (emphasis supplied).

[90] *Id.* at 17.

4056647, at *4 (emphasis supplied) (interpreting *Watts*, 316 F.3d at 1208 n. 2).[91]

Kohler also relies upon *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1226 (11th Cir. 1985), and *Spivey v. Southern Company*, 427 F. Supp. 2d 1144, 1152-53 (N.D. Ga. 2006), as the basis for its argument that an employer need not explicate the pertinent appellate procedures in its summary plan description, and can explain those procedures in separate documents provided to employees.[92] Kohler's attorneys failed to observe, however, that the summary plan description in *Mason expressly referred to* the appeals process described in a collective bargaining agreement, and that the summary plan description in *Spivey expressly referred to* the appeals process described in a separate section of the same document containing the summary plan description.[93]

---

[91] Specifically, the Eleventh Circuit in *Watts* reflected that "[i]t may well be that interpreting the document as Watts did would not have been reasonable if the letter announcing the denial of her claim had informed her she had to exhaust all of her administrative remedies before she could file a law suit." *Id.* at 1208 n. 2 (alteration supplied).

[92] Doc. no. 27 (Defendants' Brief in Support of their Motion for Summary Judgment), at 18.

[93] The summary plan description in *Mason* states as follows:

> In accordance with that section, the pension plan before us contains an appeals procedure: Any difference that may arise between you and the Company concerning your application for, entitlement to or the amount of payment of a lump sum retirement allowance, pension or deferred benefit may be taken up as a grievance *in accordance with the applicable provisions of the Master Agreement beginning at step 3 of the Grievance Procedure*, except as provided in the Medical Review Procedure described in this Booklet.

*Mason,* 763 F.2d at 1226 (emphasis supplied, internal citations omitted).

The summary plan description in *Spivey* states: "For more information about what happens if your claim is denied, *see the Administrative Information section*." *Spivey*, 427 F. Supp. 2d at 1151

None of defendants' cases apply to a situation in which the description of a *single-level* appeals process contained in a summary plan description is *contradicted* by the description of a *two-level* appeals process contained in subsequent denial letters.[94]  Although the Eleventh Circuit has not addressed such a conflict, cases from other circuits provide useful guidance.  For example, a judge in the District of South Carolina has observed that

> ERISA's fiduciary responsibility provisions, 29 U.S.C. §§ 1101-1114, are derived from certain principles of the common law of trusts.  *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989).  Under ERISA, fiduciaries may not make material misrepresentations to beneficiaries, *or provide incomplete, inconsistent, or contradictory disclosures that misinform beneficiaries*. *Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001).  Additionally, a fiduciary is obligated to affirmatively provide "material facts affecting the interest of the beneficiary which [the fiduciary] knows the beneficiary does not know and which the beneficiary needs to know for his protection."  *Griggs*, 237 F.3d at 380. "In sum, the duty to inform 'entails not only a negative duty not to misinform, *but also an affirmative duty to inform when the trustee knows that silence might be harmful.*'"  *Id.* (citing *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)).

*George v. Duke Energy Retirement Cash Balance Plan*, 560 F. Supp. 2d 444, 473-74 (D.S.C. 2008) (emphasis supplied, alteration in original).

---

(emphasis supplied, internal citations omitted).  Both the summary plan description and the "Administrative Information" section in *Spivey* are contained in a document entitled "Your Guide to Benefits."  *Id.* at 1153.

[94] *Compare* doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00121 *with* doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00128; *and id.* at K-00123.

Further, a judge in the District of New Jersey has observed that, where a summary plan description "is silent regarding additional requirements materially affecting the rights or obligations of a plan participant, such silence may essentially contradict or conflict with the terms of a plan." *Nash v. Mercedes-Benz USA, LLC*, 489 F. Supp. 2d 411, 416 (D.N.J. 2007). That opinion goes on to observe that:

> the mere absence of terms in the SPD [*i.e.*, summary plan description] does not necessarily create a conflict. To equate silence with conflict would reduce any pension plan to the specific terms contained in the summary plan description — an absurd result since by its own definition the summary plan description is meant to summarize, not recite, the detailed pension plan. *See Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1136 (10th Cir. 1998); *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1023 (7th Cir. 1997). *See generally Burstein* [*v. Retirement Account Plan for Employees of Allegheny Health Education & Research Foundation*], 334 F.3d [365,] 379 [(3d Cir. 2003)] ("it would defeat the purpose of having a summary of a full plan document if the SPD were to parrot all the terms of the plan document"). *Equally clear is that where the SPD is silent regarding additional requirements materially affecting the rights or obligations of a plan participant, such silence may essentially contradict or conflict with the terms of a plan*. *See Burstein*, 334 F.3d at 379 (where the summary plan description gave an impression that the pension plan would automatically vest upon the plan's termination, and the language of the plan imposed a significant qualification on a participant's vesting rights, a conflict was found).

*Nash*, 489 F. Supp. 2d at 416 (emphasis and alterations supplied).

The overwhelming majority of Circuits, including the Eleventh Circuit, have held that, if the language of a summary plan description differs from or conflicts with

language contained elsewhere within the plan, it is the summary plan description that controls. *See, e.g.*, *Burstein v. Retirement Account Plan for Employees of Allegheny Health Education & Research Foundation*, 334 F.3d 365, 378 (3d Cir. 2003) (summarizing all prior Circuit cases and then reaching the same result). *See also Barker v. Ceridian Corp.*, 122 F.3d 628, 633 (8th Cir. 1997) ("Summary plan descriptions are considered part of ERISA plan documents . . . . Adequate disclosure to employees is one of ERISA's major purposes . . . . Because of the importance of disclosure, in the event of a conflict between formal plan provisions and summary plan provisions, the summary plan description provisions prevail.") (internal citations omitted); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1515 (10th Cir. 1996) ("Because the SPD best reflects the expectations of the parties to the plan, the terms of the SPD control the terms of the plan itself."); *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1321 (9th Cir. 1995) ("Where the SPD . . . differs materially from the terms of the plan, the SPD is controlling."); *Pierce v. Security Trust Life Insurance Co.*, 979 F.2d 23, 27 (4th Cir. 1992) (*per curiam*) ("[I]f there was a conflict between the complexities of the plan's language and the simple language of the SPD, the latter would control") (alteration supplied); *Hansen v. Continental Insurance Co.*, 940 F.2d 971, 982 (5th Cir. 1991) ("[T]he summary plan description is binding, and . . . if there is a conflict between the summary plan description and the terms of the policy, the

summary plan description shall govern.  Any other rule would be, as the Congress recognized, grossly unfair to employees and would undermine ERISA's requirement of an accurate and comprehensive summary.") (alteration supplied); *Senkier v. Hartford Life & Accident Insurance Co.*, 948 F.2d 1050, 1051 (7th Cir. 1991) ("The insured is protected by the fact that, in the event of a discrepancy between the coverage promised in the summary plan document and that actually provided in the policy, he is entitled to claim the former."); *Edwards v. State Farm Mutual Auto Insurance Co.*, 851 F.2d 134, 136 (6th Cir. 1988) ("[S]tatements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern.") (alteration supplied); *McKnight v. Southern Life and Health Insurance Co.*, 758 F.2d 1566, 1570 (11th Cir. 1985) ("It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complicated document, and then proclaim that any inconsistencies will be governed by the plan.  Unfairness will flow to the employee for reasonably relying on the summary booklet.").

Thus, Kohler's claim that the description of the appeals process provided in both Joanne Tasche's letter denying plaintiff's claim for short-term disability benefits, and in Jim Jost's letter denying her appeal, should control must fail given the holdings of ten Circuit Courts of Appeal, including the Eleventh, that the terminology

of a summary plan description must prevail over conflicting language in the plan itself.  To hold otherwise would defeat Congress's mandate that a summary plan description "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  29 U.S.C. § 1022(a).

Accordingly, this court holds that the description of the appeals process contained in the Summary Plan Description is controlling, and that plaintiff exhausted her administrative remedies with regard to her claim for short-term disability benefits.[95]

### 2.    Long-term disability benefits

Plaintiff admits that she did not file a claim for long-term disability benefits in accordance with Kohler's claim process.[96]  Instead, plaintiff's attorney first requested *both* short- and long-term disability benefits under the terms of the Plan in a letter to Registered Nurse and Certified Occupational Health Nurse Specialist Jim Jost on *October 15, 2010* — nearly one year after plaintiff filed her claim for short-term

---

[95] Thus, the court need not reach plaintiff's claims that she is excused from the administrative exhaustion requirement, and that Kohler is estopped from raising that requirement by the actions of its employees.

[96] Doc. no. 34 (Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment), at 21-22.

disability benefits on *October 16, 2009*.[97]  Plaintiff argues that she

> should be excused from the exhaustion requirement regarding her LTD
> [*i.e.*, long-term disability] benefits because an application for those
> benefits would have been futile.  The Plan states that an employee is
> only eligible for LTD benefits after she has received 26 weeks of STD
> [*i.e.*, short-term disability] benefits and remains totally disabled.  (AR:
> K-00045).  Because of her knee pain and arthritis, and based on the
> recommendations of local HR [*i.e.*, Human Resources], [plaintiff]
> intended to get on STD and then LTD in September, 2009.  She did not
> separately apply for LTD benefits after her STD application and appeal
> had both been denied.  However, it would have been the definition of
> futility for [plaintiff] to apply for benefits that the Plan explicitly says
> she was not eligible for.  As a result, [plaintiff] should be excused from
> the exhaustion requirement regarding her LTD claim.  Alternatively, the
> Court should allow [plaintiff] an out-of-time application for LTD
> benefits.[98]

The Eleventh Circuit has expressly held that "[t]he test for 'futility' is not . . .

whether the employees' claims would succeed, but whether the employees could have

availed themselves of the grievance procedure."  *Mason v. Continental Group, Inc.*,

763 F.2d 1219, 1224 (11th Cir. 1985) (alteration supplied) (citing *Republic Steel

Corp. v. Maddox*, 379 U.S. 650, 619 (1965)).  Further, a judge in the Northern District

of Georgia has held that:

> Futility does not arise in any instance where an ERISA fiduciary
> has indicated that it perceives little merit in the participant's underlying
> claim.  *Cf. Garland v. Gen. Felt Indus., Inc.*, 777 F. Supp. 948, 951-52
> (N.D. Ga. 1991).  Were that the rule, the exhaustion defense would

---

[97] Doc. no. 22-4 (Exhibit to Declaration of Daniel J. Velicer), at K-00241.
[98] Doc. no. 34 (Plaintiff's Response in Opposition to Defendants' Motion for Summary
Judgment), at 21-22 (alterations supplied).

hardly be a defense at all — virtually any action in which an ERISA fiduciary bothered to appear and defend on the merits would be permitted to proceed despite the absence of exhaustion. The purposes advanced by the exhaustion requirement, which the Eleventh Circuit has described as "compelling," would go unserved. *See Mason*, 763 F.2d at 1227.

*Rather, in this Circuit, courts have consistently equated the concept of futility with the inability of a litigant to present his or her claim for administrative review and to have that claim considered, without reference to the probable outcome of the administrator's review. See Perrino* [*v. Southern Bell Telephone & Telegraph Co.*], 209 F.3d [1309,] 1318 [(11th Cir. 2000)] ("it makes little sense to excuse plaintiffs from the exhaustion requirement where an employer is technically noncompliant with ERISA's procedural requirements but, as the district court determined in this case, the plaintiffs still had a fair and reasonable opportunity to pursue a claim through an administrative scheme prior to filing suit in federal court")[.]

. . . .

Here, *given the absence of any evidence that Plaintiff endeavored to present his claim for review, or that Defendants would have declined to consider it if he had*, Plaintiff has fallen short of the "clear and positive showing of futility . . . required before suspending the exhaustion requirement." *Springer*, 908 F.2d at 901 (internal quotations omitted). Accordingly, the argument that his failure to exhaust should be excused on the basis of futility is without merit.

*Spivey v. Southern Co.*, 427 F. Supp. 2d 1144, 1154-56 (N.D. Ga. 2006) (emphasis and alterations to citations supplied, remaining alterations in original, additional citations omitted).

As in *Spivey*, the plaintiff in this case neither filed a claim for long-term

disability benefits, nor showed that Kohler would have *declined to consider* the claim

(as opposed to *denying* the claim) if she had done so.  A judge in the Middle District

of Florida has held that a plaintiff is not excused from *filing a claim* for long-term

disability benefits merely because her employer previously denied her claim for short-

term disability benefits.

> [Plaintiff] has not presented any facts demonstrating exceptional circumstances so as to warrant application of the narrow futility exception.  At the outset, the Court is compelled to note that [plaintiff] didn't just fail to exhaust her administrative remedies; she failed to even initiate the process by filing a claim.  How could [defendant] have been expected to begin evaluating a claim for LTD [*i.e.*, long-term disability] benefits when no claim was ever filed?  Moreover, *while it is true that* [*defendant*] *had concluded* [*plaintiff*] *was not disabled in connection with its review of her STD* [*i.e., short-term disability*] *claim, that did not necessarily mean the company was certain to reach the same conclusion had* [*plaintiff*] *submitted an LTD claim.  More importantly, there is no indication whatsoever that the company would not have fairly and thoroughly evaluated a claim for LTD benefits, had* [*plaintiff*] *bothered to file one.*  Indeed, the manner in which [defendant] handled [plaintiff's] STD claim suggests the company would have fairly considered an LTD claim.  During the process of assessing [plaintiff's] STD claim, [defendant] accepted [plaintiff's] and her physicians' submissions, evaluated them along with other information, and sent [plaintiff] correspondence explaining its reasons for denying her claim.  Moreover, each and every time [plaintiff] sought reconsideration or appeal of [defendant's] initial decision, or submitted additional medical information, the company reassessed that decision.  In sum, because there was a reasonable administrative scheme available to [plaintiff] which offered the *potential* for an adequate legal remedy, *see Perrino*, 209 F.3d 1318, [plaintiff] was required to avail herself of that scheme before resorting to litigation.  Here, application of the futility exception would eviscerate the exhaustion requirement.

*Leggett v. Provident Life & Accident Insurance Co.*, No. 6:02-CV-1032ORL22KRS, 2004 WL 291223 2004, at *46-48 (M.D. Fla. Feb. 9, 2004) (footnote omitted, emphasis to "potential" in original, remaining emphasis and alterations supplied). The *Leggett* court observed in the omitted footnote that

> it *would* be futile to remand this matter to [the defendant] so that [the plaintiff] could attempt to exhaust administrative remedies.  The LTD [*i.e.*, long-term disability] plan's time limit for filing a claim expired long ago . . . .  The plan makes clear that if a proof of loss is filed after that deadline, the claim will be denied.  Hence, any claim by [the plaintiff] for LTD benefits is now undisputably time-barred.  Under these circumstances, remand would constitute a useless formality.

*Id.* at *48 n.18 (internal citations omitted, emphasis in original, alterations supplied).

Accordingly, this court holds that plaintiff did not exhaust her administrative remedies with regard to her claim for long-term disability benefits.  The court neither excuses plaintiff's failure to exhaust, nor consents to remand the claim to permit her to do so.  That claim can proceed no farther.

**B.   Whether Kohler's Denial of Plaintiff's Claim for Short-Term Disability Benefits Was Arbitrary and Capricious**

When reviewing a claim for ERISA plan benefits, district courts "decide nothing . . . about whether the plan administrator's decisions [to deny the benefits] were absolutely correct in reality." *Blankenship v. Metropolitan Life Insurance Co.*, 644 F.3d 1350, 1357 (11th Cir. 2011) (alteration supplied).  Instead, district courts

must apply the following six-step test:

(1)   Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)   If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)   If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)   If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)   If there is no conflict, then end the inquiry and affirm the decision.

(6)   If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355 (citing *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004); *Capone v. Aetna Life Insurance Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010).   "Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision."   *Blankenship*, 644 F.3d at 1354 (citing *Jett v. Blue Cross*

& *Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989)); *see also*

*Glazer v. Reliance Standard Life Insurance Co.*, 524 F.3d 1241, 1246-47 (11th Cir.

2008) (citing *Jett*, 890 F.2d at 1139) (same).

1.    **Was the decision to deny plaintiff's claim "*de novo* wrong"?**

In order to qualify for short-term disability benefits, plaintiff must have a

"short-term disability" as defined under the terms of the Plan.  Those terms were

explicated in Part II(A) of this opinion, *supra*, but are reiterated here for the

convenience of the reader.

In a section entitled "Highlights of Your Pay Protection Program," the

Summary Plan Description states that:  "Short-Term Disability benefits are paid

weekly.  They may continue to a maximum of 26 weeks *if you are totally disabled*."[99]

A subsequent section, entitled "Your Short-Term Benefit," notably omits the

reference to "total disability" and, instead, speaks only of becoming "disabled": *i.e.*,

"*If you become disabled by accidental injury or illness, are unable to work at your*

*job, and are under a doctor's care,* you will be eligible for a weekly benefit from this

plan."[100]

The Plan's description of long-term disability benefits also contains a similar

---

[99] *Id.* at K-00050 (emphasis supplied).
[100] *Id.* at K-00052 (emphasis supplied).

contradiction.  In the section entitled "Highlights of Your Pay Protection Program," the Plan states:  "Long-term disability benefits begin *after you have been disabled for 26 weeks.*"[101]  Note again that the term "disabled" is not qualified by the adjective "total."  Conversely, the section entitled "Long-Term Disability Benefits" resurrects the "total disability" requirement when it states that:  "Benefits begin after you have received 26 weeks of Short-Term Disability *providing you remain totally disabled.*"[102]

The term "total disability" is defined in only one place:  a section entitled "When Long-Term Disability Benefits Are Paid."[103]  That part of the Plan states:

### When Long-Term Disability Benefits Are Paid

Long-Term Disability benefits begin *after you've been totally disabled for 26 weeks*.

### What "Total Disability" Means

- During the first 36 months of disability you must be totally disabled from performing *any and every duty of your occupation or similar job*.

- After 36 months you must be totally disabled from performing *any occupation or employment*.

At all times, you must be under the care of a licensed physician. Before your Long-Term Disability benefit payments can begin, your

---

[101] *Id.* at K-00050 (emphasis supplied).
[102] *Id.* at K-00054 (emphasis supplied).
[103] Doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00055.

36

disability will need to be medically verified and satisfactory to the company.[104]

*Plaintiff* relies upon the provision stating that "[i]f you become disabled by accidental injury or illness, are unable to work at your job, and are under a doctor's care, you will be eligible for a weekly benefit from this plan."[105]   *Kohler* relies upon the provisions requiring a claimant to be "totally disabled," and defining "total disability" as being "totally disabled from performing any and every duty of your job or similar occupation."[106]   Kohler has not explained the apparent inconsistency between the provisions.

"Ambiguities in ERISA plans are construed against the drafter of the document, and a claimant's reasonable interpretation is viewed as correct." *White v. Coca-Cola Co.*, 542 F.3d 848, 855 (11th Cir. 2008) (citing *Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1551 (11th Cir. 1994)).   *See generally Boin v. Verizon South, Inc.*, 283 F. Supp. 2d 1254, 1267-1268 (M.D. Ala. 2003) (denying the defendants' motion for summary judgment because they did not disprove the existence of an "internal inconsistency" in the terms of an ERISA plan).

Accordingly, this court holds that plaintiff could qualify for short-term

---

[104] *Id.* (boldface emphasis in original, all other emphasis supplied).

[105] Doc. no. 25 (Plaintiff's Motion for Summary Judgment), at 22-23 (alteration supplied) (quoting doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00052).

[106] Doc. no. 27 (Defendants' Brief in Support of their Motion for Summary Judgment), at 23 (quoting doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00055).

disability benefits by proving *only* that she was "disabled by accidental injury or illness, [was] unable to work at [her] job, and [was] under a doctor's care,"[107] without proving that she was *also* "totally disabled from performing any and every duty of [her] job or similar occupation."[108]  The court now turns to whether plaintiff met that standard.

Registered Nurse and Certified Occupational Health Nurse Specialist Jim Jost denied plaintiff's appeal of the denial of her October 16, 2009 claim for short-term disability benefits on January 27, 2010.[109]  Jost's letter states that "it is clear that both Drs. Alejandrino and Horn have diagnosed you as having osteoarthritis."[110]  Those doctors excused plaintiff from work for a total of three of the five months before September 22, 2009 (her last day) as a result of her condition.[111]

When Dr. Alejandrino excused plaintiff from work between September 22 and January 9, 2009 "due to severe knee osteoarthritis," she decided that plaintiff "is not able to fulfill the requirements of her job *any more* due to osteoarthritis."[112]  Likewise, when plaintiff visited Dr. Horn on December 11, 2009, he determined that plaintiff

---

[107] Doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00052 (alterations supplied).

[108] *Id.* at K-00055 (alteration supplied).

[109] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00123.

[110] *Id.* (alteration supplied).

[111] *Id.* at K-00126-89.

[112] Doc. no. 22-3 (Exhibit to Declaration of Daniel J. Velicer), at K-00157 (emphasis supplied).

had "osteoarthritis of knees," and was "unable to work on legs."[113]

In sum, plaintiff's medical records show:  that she was disabled by osteoarthritis of the knees (an "illness"); that she was unable to work on her legs; and that she was under the care of Dr. Alejandrino and Dr. Horn.  Accordingly, this court holds that Kohler's decision to deny plaintiff's claim was "wrong" on *de novo* review.

### 2. Was Kohler vested with discretion in reviewing claims?

The Summary Plan Description states that Kohler, as the Administrator of the Plan, "has the exclusive right to determine eligibility for benefits and to interpret the provisions of the benefit plan, so the decision by the Plan Administrator shall be conclusive and binding."[114]  The Plan's description states that "the company makes all payments from the Plan, and final decisions on all claims.  Proof of disability must be satisfactory to the company."[115]  Accordingly, Kohler had discretion in reviewing claims.  *See Tippitt v. Reliance Standard Life Insurance Co.*, 457 F.3d 1227, 1232 (11th Cir. 2006) (holding that a requirement that the insured "submit satisfactory proof of Total Disability to [the administrator]" granted the administrator discretion in reviewing claims) (alteration supplied).

### 3. Was Kohler's interpretation of the Plan reasonable?

---

[113] Doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00127.
[114] Doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00047.
[115] *Id.* at K-00056.

In determining whether reasonable grounds existed for the denial decision, the "[c]ourt's role 'is limited to determining whether [the] interpretation was made rationally and in good faith-not whether it was right.'" *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38 (11th Cir. 1989) (quoting *Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 825 (11th Cir. 1984) (alterations supplied).

As noted in Step One, *supra*, Kohler relies on the provisions requiring a claimant to be "totally disabled," and defining "total disability" as being "totally disabled from performing *any and every duty* of your job *or similar occupation*."[116] That provision conflicts with the provision stating that "[i]f you become disabled by accidental injury or illness, are unable to work *at your job*, and are under a doctor's care, you will be eligible for a weekly benefit from this plan."[117]  Given the rule that "[a]mbiguities in ERISA plans are construed against the drafter of the document," *White*, 542 F.3d at 855, defendant's interpretation of the Plan is not reasonable.

Further, Kohler argues that:

None of the materials supplied by [plaintiff] explained how her condition prevented her from performing even one, let alone *any and every duty* of her job *or a similar job*.  As [Registered Nurse and Certified Occupational Health Nurse Specialist Jim] Jost wrote [in

---

[116] Doc. no. 27 (Defendants' Brief in Support of their Motion for Summary Judgment), at 23 (emphasis supplied) (quoting doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00055).

[117] Doc. no. 25 (Plaintiff's Motion for Summary Judgment), at 22-23 (emphasis and alteration supplied) (quoting doc. no. 22-1 (Exhibit to Declaration of Daniel J. Velicer), at K-00052).

denying plaintiff's appeal], there was no evidence that her "condition prevents [her] from working, *if only on a limited or restricted basis.*" [118]

Thus, it is clear that Kohler's unreasonable interpretation of the Plan infected its denial decision.  Because no reasonable grounds exist for the denial of plaintiff's short-term disability benefits claim, this court must "end the inquiry and reverse the administrator's decision." *See Blankenship*, 644 F.3d at 1355.

## VI.  CONCLUSION

For the reasons explained above, plaintiff *is* entitled to *short-term* disability benefits, and *is not* entitled to *long-term* disability benefits.  Accordingly, plaintiff's motion for summary judgment is GRANTED with respect to her claim for *short-term* disability benefits, and defendants' motion for summary judgment is GRANTED with respect to plaintiff's claim for *long-term* disability benefits.  The remaining portions of the respective motions for summary judgment are DENIED.

The costs of this action are taxed to defendants.  The Clerk is directed to close this file – *provided*, *however*, that if the parties are unable to reach agreement upon the aggregate amount of short-term disability benefits due to be paid to plaintiff within a reasonable period of time, not to exceed 30 days from this date, the court will entertain a petition from either party to reinstate the action, and such reinstatement,

---

[118] Doc. no. 27 (Defendants' Brief in Support of their Motion for Summary Judgment), at 25-26 (emphasis and alterations supplied) (quoting doc. no. 22-2 (Exhibit to Declaration of Daniel J. Velicer), at K-00123).

if and when allowed, shall relate back to the original date of filing this action.

**DONE** and **ORDERED** this 16th day of August, 2013.

_____
United States District Judge

42